UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FRAIDY BURSTEIN,

       Plaintiff,

    - against -

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-2069 (PKC)

PAMELA K. CHEN, United States District Judge:

  Plaintiff Fraidy Burstein brings this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Social Security Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 10, 11.) Plaintiff seeks an order remanding this matter for further administrative proceedings, and the Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

**I. Procedural History**

  On June 10, 2016, Plaintiff filed an application for DIB, alleging disability beginning on June 7, 2016. (Administrative Transcript ("Tr."),[1] Dkt. 7, at 54, 56.) On July 28, 2016, Plaintiff's application was initially denied. (*Id.* at 63–67.) On September 13, 2016, Plaintiff filed a request

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

1

for a hearing before an administrative law judge ("ALJ"). (*Id.* at 70–71.) On February 22, 2018, Plaintiff appeared with counsel before ALJ Sommattie Ramrup. (*Id.* at 25–53.) In a decision dated April 27, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act") and was not eligible for DIB. (*Id.* at 11–21.) On March 25, 2019, the ALJ's decision became final when the Appeals Council of the SSA's Office of Appellate Operations denied Plaintiff's request for review of the ALJ decision. (*Id.* at 1–4.) Thereafter, Plaintiff timely[2] commenced this action.

## II.    The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's]

---

[2] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on March 30, 2019, and that, because Plaintiff filed the instant action ten days later on April 9, 2019, it is timely. (*See generally* Complaint, Dkt. 1.)

physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. However, if the impairment is severe, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations (the "Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App. 1. If the ALJ determines at step three that the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. On the other hand, if the claimant does not have a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC")[3] before continuing with steps four and five. The ALJ will then use the RFC determination in step four to determine if the claimant can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the claimant is not disabled. Otherwise the ALJ will proceed to step five where the Commissioner then must determine whether the claimant, given the claimant's RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise the claimant is disabled and is entitled to benefits. *Id.*

In this case, after finding that Plaintiff had not engaged in substantial gainful activity since June 7, 2016, her alleged onset date, the ALJ found that Plaintiff suffers from the severe impairments of asthma and obesity. (Tr., Dkt. 7, at 13.) The ALJ noted that the record documented

---

[3] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

3

other medically determinable impairments of obstructive sleep apnea,[4] pulmonary hypertension,[5] and Crohn's disease,[6] but that she did not find those impairments to be severe because "they do not cause significant (that is, more than slight or minimal) limitations on the claimant's physical and mental ability to do basic work activities." (*Id.* at 14 (citations omitted).)

The ALJ then progressed to the third step and determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." (*Id.*) Moving to the fourth step, the ALJ found that Plaintiff maintained the RFC "to perform light work as defined in 20 CFR 404.1567(b) except" with the limitations of never climbing ladders, ropes, or scaffolds despite occasionally climbing stairs and ramps. (*Id.* at 15.) The ALJ further found that Plaintiff could "tolerate occasional exposure to pulmonary irritants, such as dust, odors, and fumes," but could not "work in temperature extremes or humidity." (*Id.*)

Based upon the RFC finding, the ALJ determined that Plaintiff was capable of performing her past relevant work as an administrative assistant and receptionist. (*Id.* at 19.) The ALJ accordingly concluded that Plaintiff was not disabled. (*Id.* at 20–21.)

---

[4] Obstructive sleep apnea is a disorder "characterized by recurrent interruptions of breathing during sleep due to temporary obstruction of the airway by lax, excessively bulky, or malformed pharyngeal tissues (soft palate, uvula, and sometimes tonsils), with resultant hypoxemia and chronic lethargy." *Obstructive sleep apnea*, Stedman's Medical Dictionary 55120 (Nov. 2014).

[5] Pulmonary hypertension refers to "hypertension in the pulmonary circuit," and "may be primary[] or secondary to pulmonary or cardiac disease, *e.g.*, fibrosis of the lung or mitral stenosis." *Pulmonary hypertension*, Stedman's Medical Dictionary 426430 (Nov. 2014).

[6] "Crohn's disease is an inflammatory bowel disease (IBD). It causes inflammation of [the] digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition." *Crohn's disease: Overview*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/crohns-disease/symptoms-causes/syc-20353304 (last visited Sept. 10, 2020).

4

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotations, alterations, and citation omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision" (internal quotation omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence[,]" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld[,]" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

## DISCUSSION

Plaintiff argues that the ALJ's denial of benefits was not supported by substantial evidence and that the ALJ failed to apply the relevant legal standards. (Memorandum of Law in Support of

Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mem."), Dkt. 10-1, at 6–13.) Specifically, Plaintiff argues that the ALJ failed to appropriately weigh the medical reports of Plaintiff's treating physicians, Drs. Reuven Moshenyat, M.D. (a pulmonologist), Yitzchak Moshenyat, M.D. (a gastroenterologist), and Lilia Levitz, D.O. (an internal medicine specialist). (*Id.* at 9–13; Tr., Dkt. 7, at 291, 349–50.) The Court finds that remand is warranted because the ALJ violated the treating physician rule by failing to properly weigh the opinion of treating physician Dr. Reuven Moshenyat. The Court also finds remand warranted to develop the record as to Plaintiff's treatment history with Drs. Yitzchak Moshenyat and Levitz, and to assign proper weight to their opinions if the record shows that they were Plaintiff's treating physicians.

## I.      The Treating Physician Rule

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[7] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, brackets, and citations omitted). Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors

---

[7] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim because the current regulations apply only "to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c). Because Plaintiff filed her DIB application on June 10, 2016, the ALJ was required to apply the treating physician rule. *See* 20 C.F.R. § 404.1520(c).

6

include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

In her step-two determination that Plaintiff had the severe impairments of asthma and obesity, but not those of obstructive sleep apnea, pulmonary hypertension, and Crohn's disease, the ALJ reasoned as follows:

> I find that these impairments [*i.e.*, obstructive sleep apnea, pulmonary hypertension, and Crohn's disease], are not severe as they do not cause significant (that is, more than slight or minimal) limitations on the claimant's physical and mental ability to do basic work activities. The record does not reflect ongoing treatment for these impairments and there is no evidence of significant functional limitations resulting from these conditions. Claimant's course of treatment for these conditions is not indicative of severe or disabling impairments. These conditions were managed medically and were be [sic] amenable to proper control by adherence to recommended medical treatment and medical compliance. Furthermore, no aggressive treatment was recommended or anticipated for these conditions.

(Tr., Dkt. 7, at 14 (citations omitted).)

In her step-three determination that Plaintiff had the RFC to perform light work, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 18.) The ALJ went on to assign partial weight to the opinions of Plaintiff's treating pulmonologist, Dr. Reuven Moshenyat, and non-treating physician Dr. Vinod Thukral.[8] (*Id.* at 19.) The ALJ's decision fails to make any mention of the opinion of Dr. Levitz,

---

[8] Dr. Thukral, M.D., specializes in internal medicine and conducted a single consultative examination of Plaintiff on July 21, 2016. (*See* Tr., Dkt. 7, at 265–69.)

7

who states that she was Plaintiff's treating physician for her Crohn's disease (*see id.* at 11–21), and appears to misattribute a report submitted by Dr. Yitzchak Moshenyat as having been submitted by Dr. Reuven Moshenyat (*id.* at 17).[9]

### A.    The ALJ Failed to Properly Weigh the Opinion of Treating Physician Dr. Reuven Moshenyat

Based on the evidence in the record, Dr. Reuven Moshenyat examined Plaintiff on at least four separate occasions for shortness of breath and hypersomnia.[10] (*See* Tr., Dkt. 7, at 277–88.) Over the course of these examinations, Dr. Reuven Moshenyat noted the diagnoses of asthma, pulmonary hypertension, obstructive sleep apnea, and obesity; prescribed Plaintiff Ventolin; started Plaintiff on the use of a continuous positive airway pressure machine ("CPAP") during sleep; and advised Plaintiff to see a dentist to obtain a mandibular advancement device ("MAD"). (*Id.* at 277–88.) Accordingly, Dr. Reuven Moshenyat was a treating physician, and the parties do not dispute this. (*See* Pl.'s Mem., Dkt. 10-1, at 10; Def.'s Mem., Dkt. 12, at 17); *see Brickhouse v. Astrue*, 331 F. App'x. 875, 877 (2d Cir. 2009) (summary order) ("The regulations define 'treating source' as the claimant's 'own physician, psychologist, or other acceptable medical

---

[9] The ALJ attributes a Medical Assessment of Ability to do Work-Related Activities dated February 11, 2018 (Tr., Dkt. 7, at 289–91) to Dr. Reuven Moshenyat (*id.* at 17), but the Court notes that while the February 8, 2018 assessment was completed by "R Moshenyat, M.D." (*see id.* at 349), the February 11, 2018 assessment was completed by "Yitchak Moshenyat" (*id.* at 291). The ALJ made this error notwithstanding clarification by Plaintiff's counsel at the hearing that one report was submitted by Dr. Yitzchak Moshenyat, and the other by Dr. Reuven Moshenyat. (*Id.* at 30.) The Commissioner also notes in its brief that the February 8, 2018 report was completed by Dr. Reuven Moshenyat, and the February 11, 2018 report by Dr. Yitzchak Moshenyat. (*See* Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings ("Def.'s Mem."), Dkt. 12, at 6.)

[10] Hypersomnia is "[a] condition in which sleep periods are excessively long." *Hypersomnia*, *Stedman's Medical Dictionary* 426050 (Nov. 2014).

source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].'" (quoting 20 C.F.R. § 404.1502)).

On February 8, 2018, Dr. Reuven Moshenyat completed a Medical Assessment of Ability to do Work-Related Activities. (Tr., Dkt. 7, at 347–49.) In the report, Dr. Reuven Moshenyat indicated that Plaintiff could lift less than ten pounds, stand and/or walk for less than two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday; must periodically alternate between sitting and standing to relieve pain or discomfort; and was limited in both upper and lower extremities in her ability to push and pull. (*Id.* at 347–48.) Dr. Reuven Moshenyat further noted that Plaintiff could "do very little," had "limited ability," and had other impairment-related physical limitations. (*Id.* at 348–49.) In giving partial weight to Dr. Reuven Moshenyat's opinion, the ALJ explained that

> [Dr. Reuven Moshenyat's] opinion has no explanation as to the basis for his assessment, is not supported by his treatment records (which generally show unremarkable physical examination findings), and is inconsistent with his course of treatment. Notably, while Dr. [Reuven] Moshenyat limits claimant due to her Crohn's disease, claimant's only medication per his own treatment records related to this condition has been Imodium. . . . Further, Dr. [Reuven] Moshenyat offers no explanation for his limitations related to claimant's upper extremities. Claimant has not alleged any impairment related to her upper extremities and there are no clinical or diagnostic findings related to the same. Last, Dr. [Reuven] Moshenyat describes his specialty as pulmonary and sleep medicine, and as it relates to claimant's Crohn's disease, he has offered an opinion outside his specialty.

(*Id.* at 19.)

The ALJ does not rely on substantial evidence when giving only partial weight to Dr. Reuven Moshenyat's opinion. First, to the extent that the ALJ discounts Dr. Reuven Moshenyat's reports of Plaintiff's limitations caused by Crohn's disease because her treatment was limited to taking Imodium, this reasoning is a gross mischaracterization of the treatment Plaintiff underwent following her June 2016 flare-up. The record indicates that, on May 24, 2016, Plaintiff underwent a colonoscopy that revealed non-bleeding external internal hemorrhoids and active Crohn's disease

9

with mucosal inflammation (*id.* at 221–22), and an upper GI endoscopy that showed chronic duodenitis, chronic gastritis, LA Grade A reflux esophagitis, and normal oropharynx (*id.* at 224–25). A CT scan on June 8, 2017 revealed "[c]ontinued descending and proximal sigmoid colitis, with [a] slight increase in surrounding inflammatory change with small adjacent pericolonic/intramural abscess." (*Id.* at 227.) Another colonoscopy was recommended "after treatment of the acute episode" "to rule out [an] underlying lesion." (*Id.*) A subsequent CT scan on August 5, 2016 revealed increased colonic inflammation, and "multiple[] new tiny abscesses adjacent to the inflamed colon." (*Id.* at 346.) On August 15, 2016, Plaintiff underwent a colectomy procedure that removed a 45 cm section of her small bowel. (*Id.* at 341–44.)

Second, to the extent that the ALJ found Dr. Reuven Moshenyat's opinion lacked an explanation for his described limitations, she "must first ask the treating physician to clarify the deficiencies [she] perceives in that opinion." *Austin v. Comm'r of Soc. Sec.*, No. 18-CV-331 (PKC), 2019 WL 4751808, at *6 (E.D.N.Y. Sept. 30, 2019) (citation omitted); *see also Calzada v. Astrue*, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996))). Furthermore, while an ALJ is entitled to disregard the opinion of a claimant's treating physician after giving the physician the opportunity to correct the deficiencies in her medical reports, the ALJ must make clear that this decision is based on conclusions made by other medical professionals, and not by the ALJ. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."); *Hillsdorf v. Comm'r of Soc. Sec.*,

10

724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."). The Court notes that other medical professionals who examined Plaintiff and/or her medical records appear to largely agree with Dr. Reuven Moshenyat's assessment of Plaintiff's physical limitations.[11] The Court accordingly finds that the ALJ improperly substituted her own opinion for those of the medical professionals.

Third, the ALJ declined to give controlling weight to Dr. Reuven Moshenyat's assessment while instead relying on Plaintiff's testimony about her daily activities and purported "medical evidence" in finding that Plaintiff had an RFC to do light work. (Tr., Dkt. 7, at 18–19.) To the extent that the ALJ relied on Plaintiff's daily activities to discount Dr. Reuven Moshenyat's assessment, this was also in error. The ALJ wrote:

> While I am sympathetic to the claimant's allegations, I find that her testimony and the medical evidence do not support a finding of disability. Specifically, she testified [about] caring for her two young children, ages seven and ten years old, getting them ready for school, taking them to the bus, and picking them up after school. She traveled to Israel for ten days to perform a religious ritual for her late husband at the end of 2017.

(*Id.* at 18.) In summarizing Plaintiff's daily activities as such, the ALJ overstated the level of Plaintiff's functionality. Plaintiff made clear that her functionality was limited, for example, by

---

[11] Dr. Thukral found that Plaintiff "ha[d] no limitation for sitting, but ha[d] marked limitations for standing, bending, pulling, pushing, lifting, carrying, and any other such-related activities due to the Crohn's disease, resulting to multiple symptomatologies." (Tr., Dkt. 7, at 268–69.) Dr. Yitzchak Moshenyat opined that Plaintiff could lift less than ten pounds, stand and/or walk for less than two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, must periodically alternate between sitting and standing to relieve pain or discomfort, and was limited in both upper and lower extremities in her ability to push and pull. (*Id.* at 289–91.) Dr. Levitz noted in her February 20, 2018 letter that Plaintiff was "significantly limit[ed] in her ability to ambulate, sit or stand for prolonged periods of time," and has "great difficulty with achieving many of her activities of daily living." (*Id.* at 350.)

11

specifying that she was "extremely tired all the time," "ha[d] a lot of joint pain and lower back pain," and "ha[d] to go to the bathroom very, very often[,] . . . usually at least once an hour and usually for a period of time" to "take care of and manage [her] ileostomy[12] bag." (*Id.* at 37.) The ALJ offers no explanation for finding "not supported by the medical record" Plaintiff's testimony "to still being extremely tired and experiencing back and joint pain due to [the] auto-immune nature of Crohn's." (*See id.* at 18.) Nor does the ALJ provide reasons for finding "not supported by the medical evidence" Plaintiff's testimony "that she needs to go to the bathroom once per hour to manage her ileostomy bag, and spends about 80 minutes in an 8-hour day." (*See id.* at 18–19.)

In her decision, the ALJ highlighted that Plaintiff's "typical day involves getting her children ready for school, taking them to the bus, going to doctor appointments, going outside for a while, coming back home to sleep for a few hours, and picking up her children from school in the afternoon." (Tr., Dkt. 7, at 16.)  But Plaintiff's testimony included relevant details that the ALJ omitted in her decision.  Plaintiff explained, for example, that she tries "to schedule [going outside] for the morning because that's usually when [she] ha[s] the most energy." (*Id.* at 38.) She went on to state that her walking was limited because she was "in pain a lot," (*id*) and later explained that "[she] walks slowly, carefully" and sometimes could barely walk because of "tremendous joint pain" (*id.* at 44–45). Plaintiff also explained that she could stand for "[m]aybe five, six minutes, then [her] lower back starts to hurt [her] more," and though sitting is "sometimes [] easier than standing," her "lower back hurts sometimes and even [her] leg muscles, sometimes, will start to hurt, will throb." (*Id.* at 45.)  When explaining why she had not yet seen a dentist for

---

[12] An ileostomy is a medical procedure that creates "a fistula through which the ileum discharges directly to the outside of the body." *Ileostomy*, *Stedman's Medical Dictionary* 434630 (Nov. 2014).

a MAD, as directed by Dr. Reuven Moshenyat, to help with her breathing problems, Plaintiff answered that

> [the appointment]'s upcoming now.  I've been—it's been one of the issues also with being tired all the time and being in such pain.  Very often I should be going to more doctors and I very often [] don't schedule or I don't go because I have to postpone it because I'm just not feeling up to it.

(*Id.* at 44.)  The ALJ also stated that while Plaintiff needs help putting on her socks, she "can take care of her personal needs independently." (*Id.* at 16.)  However, Plaintiff explained that dressing by herself has "become a lot harder" because "[s]ometimes [her] lower back and [] muscles are in so much pain that [she] literally can't put [her] socks on." (*Id.* at 39.)  She also explained that she could shower on her own, but that that had "become more difficult too.  Again, because of the pain in the muscles, it's become more difficult to reach certain areas." (*Id.* at 40.)  The ALJ noted that Plaintiff "visits with her parents," "does not drive; [] uses Uber, and may take the bus at times." (*Id.* at 16.)  But Plaintiff explained that though she could often "make it [to her parents' home] sometimes with the bus, . . . very often [she is] in so much pain or [is] so exhausted that [she] ha[s] to take an Uber home." (*Id.* at 40.)

Finally, the ALJ noted that Plaintiff "traveled to Israel at the end of 2017 for the anniversary of her husband's death and was there for ten days" (*id.* at 16), but this too is insufficient grounds for declining to assign controlling weight to a treating physician's opinion.  *See Doyle v. Apfel*, 105 F. Supp. 2d 115, 120 (E.D.N.Y. 2000) ("The activities of daily living that [the ALJ] relied upon, such as reading, watching TV, doing light household work, going out to dinner periodically, and taking occasional trips, are not indicative of an ability to satisfactorily perform a job . . . .  It is improper to reject the testimony of a treating physician based on consideration of such mundane activities, or for the ALJ to substitute his judgment for that of the treating physician as to the significance of a claimant's ability to perform such activities." (citing *Balsamo v. Chater*, 142 F.3d

13

75, 81–82 (2d Cir. 1998); *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 643 (2d Cir. 1983))).

The Court finds that the ALJ overstated the extent of Plaintiff's functionality as described in her testimony in finding that Plaintiff had the RFC to perform light work. *See Bialek v. Astrue*, No. 11-CV-5220 (FB), 2013 WL 316165, at *4 (E.D.N.Y. Jan. 28, 2013) (noting that a claimant's ability "to tend to his personal needs and travel to appointments is not indicative of his ability to perform light work"); *Martin v. Astrue*, 2009 WL 2356118, at *12 (S.D.N.Y. July 30, 2009) (noting that claimant's ability to engage in "mundane tasks of life . . . do[es] not necessarily indicate that [a claimant] is able to perform a full day of sedentary work"). Any reliance on Plaintiff's limited functionality thus cannot serve as compelling evidence for discounting Dr. Reuven Moshenyat's report regarding the extent of Plaintiff's physical limitations. *See Lim v. Colvin*, 243 F. Supp. 3d 307, 317 n.7 (E.D.N.Y. 2017) (remanding case, given the claimant's subjective complaints of pain and accordingly limited functionality, with the direction that "[t]hese stated limitations should be considered on remand").

### B. The ALJ Failed to Consider the Opinion of Treating Physician Dr. Levitz and to Develop the Record as to Plaintiff's Treatment with Dr. Levitz

The Court finds that the record is incomplete as to Plaintiff's history of treatment with Dr. Levitz. Dr. Levitz wrote on February 20, 2018 that Plaintiff had been under her care since August 2016 (*see* Tr., Dkt. 7, at 350), but the record does not contain evidence of that treatment, or, for that matter, any treatment for Plaintiff's Crohn's disease after August 2016.[13] "The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." *Rodriguez v.*

---

[13] The Court notes that the record indicates that Plaintiff was referred to Dr. Reuven Moshenyat for treatment by Dr. Levitz (*see* Tr., Dkt. 7, at 278), though the record lacks evidence of Plaintiff's treatment with Dr. Levitz herself.

14

*Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) (citing *Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999)). As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from his medical sources" and "must seek additional evidence or clarification when the report from [the] claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada*, 753 F. Supp. 2d at 269 (quotations and brackets omitted); *see also* 20 CF.R. §§ 404.1512(e)(1), 416.912(e)(1). This duty applies "even where the applicant is represented by counsel." *Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order). "Whether the ALJ has met his duty to develop the record is a threshold question," *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016), and "[l]egal errors regarding the [ALJ's] duty to develop the record warrant remand," *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015); *see also Nusraty v. Colvin*, 213 F. Supp. 3d 425, 442 (E.D.N.Y. 2016) (finding that, under his "affirmative duty" to develop the record, the ALJ "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings").

What is more, the ALJ discounted Dr. Levitz's opinion in its entirety by failing to make any mention of her February 20, 2018 letter (*see* Tr., Dkt. 7, at 19), notwithstanding the fact that Dr. Levitz appears to have been one of Plaintiff's treating physicians (*see id.* at 350 (noting in 2018 that Plaintiff had been under Dr. Levitz's care since August 2016)). The record includes Dr. Levitz's treatment note indicating that Plaintiff "ha[d] undergone extensive medical treatment for a chronic, progressive and serious case of Crohn's Disease" between 2016 and 2018. (*See id.*) Dr. Levitz further noted that Plaintiff underwent a sub-total colectomy that resulted in a permanent

15

ileostomy and short bowel syndrome,[14] "which caused a significantly malnourished state for which she needed to receive Total Parenteral Nutrition.[15]" (*Id.*)  After Plaintiff's surgery, Dr. Levitz explained, Plaintiff "required many months of extensive home care" and "multiple wound care consultations and treatments" for an ulcer she had developed around her stoma site, and other skin complications. (*Id.*)  Dr. Levitz further noted that Plaintiff suffered from "chronic musculoskeletal problems that cause[d] chronic and severe pain and significantly limit[ed] her ability to ambulate, sit or stand for prolonged periods of time and cause[d] chronic fatigue, decreased endurance and a great difficulty with achieving many of her activities of daily living." (*Id.*)  As of February 20, 2018, Dr. Levitz opined "that due to the significant, severe and progressive nature of [Plaintiff's] medical problems as well as her difficult and debilitating post-operative course, she ultimately requires approval for full disability benefits." (*Id.*)

Accordingly, the Court finds remand warranted to consider Dr. Levitz's opinion, in addition to developing the record as to Plaintiff's treatment history with Dr. Levitz.  If evidence introduced on remand shows that Dr. Levitz was one of Plaintiff's treating physicians, the ALJ must assign Dr. Levitz's opinion controlling weight or specifically justify the decision not to do so, as required by the treating physician rule.

---

[14] Short-bowel syndrome consists of "malabsorption and maldigestion resulting from disease or resection of large portions of the small intestine." *Short-bowel syndrome*, *Stedman's Medical Dictionary* 888350.

[15] "Parenteral nutrition (PN) is intravenous administration of nutrition . . . for patients who cannot eat or absorb enough food through tube feeding formula or by mouth to maintain good nutrition status." *What is Parenteral Nutrition*, AM. SOC'Y FOR PARENTERAL & ENTERAL NUTRITION, http://www.nutritioncare.org/about_clinical_nutrition/what_is_parenteral_nutrition/ (last visited Sept. 10, 2020).

### C. The ALJ Failed to Develop the Record as to Plaintiff's Treatments with Dr. Yitzchak Moshenyat

Plaintiff further argues that the ALJ also erred in discounting the opinion of Dr. Yitzchak Moshenyat. (Pl.'s Mem., Dkt. 10-1, at 10.) Dr. Yitzchak Moshenyat appears to be a treating physician, having seen and provided treatment to Plaintiff at least three times. (*See* Tr., Dkt. 7, at 32.) The Commissioner responds that the record lacks evidence that Dr. Yitzchak Moshenyat provided treatment to Plaintiff, and that "[b]ecause Plaintiff was represented by counsel at all times, she cannot now claim that there was a gap in the record that the ALJ should have filled." (Def.'s Mem., Dkt. 12, at 21.) Contrary to the Commissioner's argument, "[e]ven when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike the judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks, ellipsis, and citations omitted). Because "the ALJ has failed to fully develop the factual record, the proper remedy is to remand the case for further proceedings." *Elliott v. Colvin*, No. 13–CV–2673 (MKB), 2014 WL 4793452 at *18 (E.D.N.Y. Sept. 24, 2014). The Court finds remand warranted in light of the ALJ's failure to develop the record as to Plaintiff's treatment history with Dr. Yitzchak Moshenyat. If evidence introduced on remand shows that Dr. Yitzchak Moshenyat was Plaintiff's treating physician, the ALJ must consider his opinion as required by the treating physician rule.

In sum, the Court finds that remand is warranted to (1) assign proper weight to Plaintiff's treating physician, Dr. Reuven Moshenyat, pursuant to the treating physician rule; and (2) develop the record as to Plaintiff's treatment history with Drs. Levitz and Yitzchak Moshenyat. If, on remand, it is determined that Drs. Levitz and Yitzchak Moshenyat were also Plaintiff's treating physicians, their opinions must be given proper weight pursuant to the treating physician rule.

17

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 26, 2020
       Brooklyn, New York